**HOGUE v. CITY OF BOWIE.**

No. 14932.

Court of Civil Appeals of Texas. Fort Worth.

March 19, 1948.

Rehearing Denied April 9, 1948.

808

E. W. Napier, of Wichita Falls, for appellant.

T. H. Yarbrough, of Bowie, for appellee.

SPEER, Justice.

This is an appeal by J. W. Hogue from an adverse judgment in a case tried to the court wherein he sued the City of Bowie, seeking a prohibitory and mandatory injunction requiring the City to correct a defective condition in its sewerage system and to refrain from emptying unprocessed sewage into Jones Creek.

There were no allegations of damages resulting to appellant, and none were attempted to be proven. There were no allegations that appellant was without an adequate remedy at law, hence only the equitable remedy by injunction was sought.

The City is a municipal corporation with about 5,000 population. Its topography is such that the natural drainage is about equally divided north and south. It maintains two sewage disposal plants, one on either side of town.

The system was installed in about 1915 by private interests and in 1943 the City acquired it. Only the disposal vat on the south side is involved here. The disposal vat is located just outside the city limits. Throughout the south side of town there are many ditches and depressions which drain south and form what is known as Jones Creek, which extends in a general southerly direction, to its confluence with Sandy Creek, the latter flows into the West Fork of the Trinity River.

Appellant owns and lives on a tract of land of 105 acres about four or five miles from the city down Jones Creek. That creek or stream does not run except when spring freshets come. Most of the time it dries up into pools and the water is stagnant and gives off offensive odors. Appellant claimed these odors were objectionable in the enjoyment of his home and the polluted water was unfit for his three cows to drink. While he had a surface tank to accommodate his cows, yet it would be more convenient to him for his cows to have access to the water in the stream.

There is substantial testimony to the effect that the sewerage system in the City had been operated for about twenty-five years before the City purchased it in 1943. At that time the City more than doubled the capacity, especially in the disposal vats; that within the past three or four years the population had increased from 3,500 to 5,000 and that recently the City had been siphoning the liquids from the vats and causing it to run slowly through 2,500 feet of its "S" shaped terraces on its own land before passing from the terraces a quarter of a mile through a pipe or conduit to Jones Creek; that the City contemplated making additional improvements at a cost of $25,000 as soon as the money could be raised by a bond issue and materials obtained; the evidence is conflicting as to whether livestock will drink the water in the stream.

The sewerage system has had the approval of the State Health Department until recently; that department has now recommended that an "Emhoff" system be installed. The recommended system operates upon the same general principle as that now in use. But the City has agreed to install the "Emhoff" system to meet the recommendations of the State Department and will do so as quickly as the funds can be secured and equipment obtained. The City officials are attempting to accomplish all' this and know of nothing else that can be done that they have not already done.

There was much more testimony than that here referred to but it is not necessary to go further into details.

· No findings of fact were requested and none filed other than those incorporated in the judgment. The judgment, among other things, recites: "* * * that defendant City of Bowie is not now, by its sewerage disposal plant, polluting any public body of surface water of this State; and that adequate improvements are now under construction sufficient to prevent future pollution of any public body of surface water of this State and further finds that a balancing of equities as between the plaintiff and the defendant does not justify the relief sought herein by the plaintiff."

The judgment continues in usual form denying to plaintiff the equitable relief sought.

Appellant assigns two points of error, substantially they are: (1) The conduct of the City is in contravention of Article 698b, Vernon's Ann.Penal Code, and (2) was an invasion of the common law rights of the plaintiff.

■ The Penal Code provision relied upon by appellant was found by the trial court, in fact, not to exist. When that provision is analyzed, there is evidence to support the court's findings.

Appellant's second point is not well taken, for many reasons. It will be observed that appellant did not seek damages for a taking or unlawful "invasion" of his property rights in his land, but sought only equitable relief for acts of the City shown by the undisputed evidence to have

existed for many years and long prior to the time he acquired his property in 1942. The matters complained of were shown to be largely inconveniences, and not a threatened injury to his property of a substantial nature.

It affirmatively appears that to prohibit and abate the use of the sewerage system for any substantial length of time would violate the property rights of several thousand persons who had the right to expect the City to comply with sanitary and health codes; and it is equally certain that the City had endeavored for many years to do so.

■ It seems to be the settled law in this state that courts will deny equitable injunctive relief to a complaining party, if by balancing the equities between him and the general public more harm and inequities would follow to the many than to the complaining one, if such relief be granted. Mitchell v. City of Temple, Tex.Civ.App., 152 S.W.2d 1116, writ refused, want of merit.

In Boyd v. City of San Angelo, Tex.Civ. App., 290 S.W. 833, error refused, the same doctrine of balancing equities was announced. In the same case a rule was announced, in substance, that where a statutory nuisance is shown to exist (none was found to exist in the instant case), equity will not give a complainant relief because of a diminution of value in the absence of a showing that same was irreparable. A strong showing is required to justify the extreme remedy by the equitable injunction. The cited case also applies the wholesome doctrine of balancing equities previously pointed out by us.

■ In cases like this where injunctive relief only is sought, the general rule is that the applicant must plead and show that he does not have an adequate remedy at law. This was not asserted by appellant. It is obvious to us from the testimony that he had sustained no substantial damages to his property from tortious acts of the City; it follows that if he had sustained such damages, he would have had an adequate remedy at law, if he had chosen to pursue it. We are not to be understood as

indicating that he could have recovered any damages under the developed facts before us. We do not have such a case. Under somewhat similar conditions now before us, a plaintiff was denied recovery of damages. City of Temple v. Mitchell, Tex. Civ.App., 180 S.W.2d 959. The parties to that suit were the same as those in 152 S. W.2d 1116 cited supra.

We think a correct judgment was entered by the trial court; both points are overruled and the judgment is affirmed.